# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

ARTHUR J. CLEMENS, Jr.,      )
                        )
       Plaintiff,            )
                        )
    v.                      )        No. 4:17CV2381 RLW
                        )
LOCAL ONE, SERVICE EMPLOYEES   )
INTERNATIONAL UNION, et al.,      )
                        )
       Defendants.         )

## MEMORANDUM AND ORDER

This matter is before the Court on numerous motions filed by *pro se* Plaintiff Arthur J. Clemens, Jr., and Defendants Local One, Service Employees International Union ("Local One"), Tom Balanoff, Laura Garza, and Nancy Cross (collectively referred to as "Defendants"). The Court has carefully read and considered every motion and related memoranda and finds that Plaintiff has failed to state any claim upon which relief can be granted. Because Defendants' Motion to Dismiss or in the Alternative for Summary Judgment (ECF No. 65) resolves the case in its entirety, the other motions are denied as moot.

## BACKGROUND

Plaintiff Arthur J. Clemens, Jr., is employed by employers who are contracted to clean Busch Stadium in Saint Louis, Missouri after events at the stadium. (Defs.' Statement of Uncontroverted Material Facts ("SUMF") ¶ 2, ECF No. 67)[1] He is a dues-paying member of Local One, which is a labor union representing approximately 46,000 members in the service

---

[1] Plaintiff filed a response to Defendant's Statement of Uncontroverted Material Facts in which he responds to each numbered paragraph. (ECF No. 86) For the purposes of addressing Defendants' motion as one for summary judgment, the Court only includes facts that are in fact undisputed by the parties.

industry across six contiguous states. (*Id.* at ¶¶ 1, 7) Defendants Tom Balanoff, Laura Garza, and Nancy Cross are agents of Defendant Local One and serve as president, treasurer, and vice president respectively. (*Id.* at ¶ 6)

Plaintiff's *pro se* Amended Complaint (ECF No. 46) asserts the following fifteen counts against Defendants:

I. That Local One raised monthly membership dues from $37 to $42 for the calendar year 2016 without a valid vote in violation of the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 411(a)(3)(A);

II. That Local One raised monthly membership dues from $42 to $47 for the calendar year 2017 through to the present without a valid vote;

III. That Local One raised monthly membership dues from $39 to $41 for the calendar years 2009-2011 without a valid vote;

IV. That the vote to increase dues for calendar years 2016 and 2017 was conducted on a date when Plaintiff and other union members employed at Busch Stadium were unable to attend and no accommodation was made for them to vote absentee or by representative;

V. That other dues-paying members of Local One have suffered similar damages to Plaintiff in 2016 and 2017, justifying class certification and appointment interim class counsel;

VI. That several votes be declared null and void for failure to give sufficient notice of the relevant meetings;

VII. That Local One's policies violate its constitution and bylaws and have obstructed his efforts to run for president of Local One;

VIII. That Local One's payments to its chosen law firm constitute a violation of 29 U.S.C. 481(g)'s prohibition of using dues to promote the candidacy of an individual in any election by preventing fair elections;

IX. That Balanoff, Garza, and Cross engaged in financial malpractice as defined in the constitution for the international union of which Local One is apart, Service Employees International Union ("SEIU"), which requires them to pay restitution and Local One to be placed into receivership with a court-appointed trustee;

X. That Local One's policies violate SEIU's constitution and bylaws as well as rights guaranteed under the United States Constitution by requiring Plaintiff to obtain over 800 signatures from dues-paying members in order to qualify to be on the ballot for any Local-wide election;

XI. That the increases in Plaintiff's monthly membership dues were higher than the rate formula described in Local One's bylaws purports to establish;

XII. That other dues-paying members of Local One have suffered similar damages to Plaintiff as alleged in Count XI, justifying class certification and appointment of class counsel;

XIII. That, incorporating his allegations in Count VI, other dues-paying members of Local One have been denied their right to freedom of assembly as guaranteed by the First Amendment to the United States Constitution;

XIV. That 29 U.S.C. § 481(c) violates his freedom of assembly under the First Amendment to the United States Constitution and the Court should declare it unconstitutional in light of modern technological advances; and

XV.    That 29 U.S.C. § 481(c) also violates the equal protection clause of the Fourteenth Amendment and the Court should declare 29 U.S.C. 481(c) unconstitutional in light of modern technological advances.

The Court has already ruled on numerous motions filed in this case by both parties. For example, the Court denied Plaintiff's motion for default judgment after Defendants' initial twelve-day delay in filing their answer to the original complaint (ECF No. 22); granted Plaintiff's Motion for Leave to File Constitutional Challenge, which the Court construed as a Motion for Leave to File an Amended Complaint (ECF No. 45); denied Plaintiff's Motion to Disqualify Defense Counsel (ECF No. 92); and struck a filing by Plaintiff that wrongfully accused defense counsel of witness tampering (ECF No. 92).

Motions pending before the Court now include the following: motions to compel filed by Plaintiff (ECF Nos. 58, 59, & 60); Defendants' Motion to Dismiss or in the Alternative for Summary Judgment (ECF No. 65); Plaintiff's Rule 23 Motion for Class Action Status (ECF No. 69); Plaintiff's eleven separate Motions for Summary Judgment directed at Counts I, II, III, IV, V, VI, VII, VIII, IX, XI, and XII respectively (ECF Nos. 71-81); Plaintiff's Motion to Depose Rebuttal Witness (ECF No. 85); Plaintiff's Motion for Reconsideration of Denial of Plaintiff's Motion to Enjoin and Restrain Garza from the Use of Local One, SEIU Treasury Money to Pay Legal Fees to Defendant's chosen law firm and counsel (ECF No. 94); Plaintiff's Motion to File out of Time Additional Exhibits and Pleadings (ECF No. 97); Plaintiff's Motion to Expedite Proceedings (ECF No. 100) and Defendant's Motion for Additional Time to Respond thereto (ECF No. 101).

As explained fully below, the Court finds that certain claims in the Amended Complaint should be dismissed pursuant to Rule 12(b)(6) and that Defendants are entitled to summary

judgment on the remaining claims. Because Defendants' Motion to Dismiss or in the Alternative for Summary Judgment (ECF No. 65) resolves the case in its entirety, the other motions are denied as moot and are not analyzed in this Memorandum and Order.[2]

## MOTION TO DISMISS

### I. Legal Standard

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* at 555. Courts must liberally construe the complaint in the light most favorable to the plaintiff and accept the factual allegations as true. *See Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (stating that in a motion to dismiss, courts accept as true all factual allegations in the complaint); *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008) (explaining that courts should liberally construe the complaint in the light most favorable to the plaintiff).

However, "[w]here the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008) (citation omitted). Courts "are not bound to accept as

---

[2] The Court notes Plaintiff's fifteen separately filed Motions for Summary Judgment do not comport with this district's local rules. *See* E.D.Mo. L.R. 4.01(E) ("A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations."). Plaintiff's failure to comply with Local Rule 4.01(E) by including a statement of uncontroverted material facts would warrant dismissal of his eleven separate Motions for Summary Judgment (ECF Nos. 71-81) without prejudice. *See, e.g., Mecklenburg Farm, Inc. v. Anheuser-Busch, Inc.*, No. 4:07-CV-1719 CAS, 2008 WL 2518561, at *2 (E.D. Mo. June 19, 2008).

- 5 -

true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). When considering a motion to dismiss, a court can "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Legal conclusions must be supported by factual allegations to survive a motion to dismiss. *Id.*

## II. Plaintiff's claims challenging past elections

Defendants argue Plaintiff's claims purporting to challenge the validity of past elections of Local One officers must be dismissed because the Court lacks jurisdiction over private actions by individual union members making such claims.

> Title IV of the [LMRDA] establishes a set of substantive rules governing union elections, . . . and it provides a comprehensive procedure for enforcing those rules . . . . Any union member who alleges a violation may initiate the enforcement procedure. He must first exhaust any internal remedies available under the constitution and bylaws of his union. Then he may file a complaint with the Secretary of Labor, who 'shall investigate' the complaint. Finally, if the Secretary finds probable cause to believe a violation has occurred, he 'shall . . . bring a civil action against the labor organization' in federal district court, to set aside the election if it has already been held, and to direct and supervise a new election. With respect to elections not yet conducted, the statute provides that existing rights and remedies apart from the statute are not affected. But with respect to an election already conducted, '(t)he remedy provided by this subchapter . . . shall be exclusive.'

*Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 531 (1972). The Supreme Court has held that the "exclusive" remedy for alleged violations of Title IV is a lawsuit by the Secretary of Labor and § 483 "prohibits union members from initiating a private suit to set aside an election." *Trbovich*, 404 U.S. at 531 (citing *Calhoon v. Harvey*, 379 U.S. 134, 140 (1964)); 29 U.S.C. § 483 ("The remedy provided by this subchapter for challenging an election already conducted shall be exclusive.").

Plaintiff brings his claims related to past elections pursuant to the "Bill of Rights" outlined in Title I of the LMRDA, 29 U.S.C. § 411. However, the precedent is clear that "the exclusivity provision included in . . . Title IV plainly bars Title I relief when an individual union member challenges the validity of an election that has already been completed." *Local No. 82, Furniture & Piano Moving, Furniture Store Drivers, Helpers, Warehousemen & Packers v. Crowley*, 467 U.S. 526, 541 (1984). Assuming *arguendo* that Plaintiff exhausted the internal remedies available under SEIU's constitution and bylaws related to challenging past elections as he so pleads[3] (Am. Compl. at 46, ECF No. 46), the Court finds that Plaintiff cannot bring a private action because the exclusivity provision in § 483. Accordingly, Plaintiff's claims related to the validity of past elections contained in Counts VII, VIII, X, XIV, XV are dismissed because the Secretary of Labor is the only entity that can enforce such claims against labor unions under the LMRDA.

### III. Plaintiff's constitutional claims against Defendants

In addition to the claims under the LMRDA, Plaintiff brings certain claims pursuant to 42 U.S.C. § 1983 for violations of his rights guaranteed by the First and Fourteenth Amendments. 42 U.S.C. § 1983 was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978). Section 1983 provides no substantive rights; it merely provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983; *see*

---

[3] In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences most favorably to the complainant. *U.S. ex rel. Raynor v. Nat'l Rural Utilities Co-op. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012); *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008). Consequently, for the purpose of determining whether Plaintiff's claims related to past elections survives a Rule 12(b)(6) motion, the Court took Plaintiff's pleading at its word that he exhausted internal union remedies. As explained elsewhere in the Memorandum and Order, the Court finds Plaintiff's failure to exhaust internal union remedies defeats several other claims under the summary judgment standard.

*also Albright v. Oliver*, 510 U.S. 266, 271 (1994) (section 1983 "merely provides a method for vindicating federal rights elsewhere conferred"). To state a claim under § 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation of that right was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Defendants argue Plaintiff's constitutional claims under § 1983 must be dismissed because Defendants are private actors who were not acting under color of state law. "Private actors may incur section 1983 liability only if they are willing participants in a joint action with public servants acting under color of state law."[4] *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 536 (8th Cir. 1999). Defendants are clearly private actors and Plaintiff has not alleged facts necessary to hold them liable for any alleged constitution violations pursuant to § 1983.[5]

---

[4] In Plaintiff's response to Defendants' Motion to Dismiss or in the Alternative for Summary Judgment, he claims that "the Labor Department, SEID Local One, and SEID International . . . are acting under the color of Federal Law to violate his previously stated Constitution Rights." (ECF No. 87, at 2-3) He has not named the United States Department of Labor as a defendant in this case. If he had named the Department of Labor as a defendant, the claim would fail because of sovereign immunity and because any individually named defendant at the Department of Labor would not be acting under *state* law. Further, he has not pleaded sufficient facts to establish liability for Defendants as private actors to be liable in conjunction with any act by any government entity. "[A] plaintiff seeking to hold a private party liable under § 1983 must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor." *Mershon v. Beasley*, 994 F.2d 449, 451 (8th Cir. 1993). The facts alleged with respect to a conspiracy must be specific and may not be merely conclusory. *See White v. Walsh*, 649 F.2d 560, 561 (8th Cir. 1981). Plaintiff has failed to do so here.

[5] Plaintiff makes conclusory claims in the Amended Complaint that Defendants acted "under the color of the authority of the Local One, Service Employees International Union Constitution and Bylaws, the Service Employees International Union Constitution and Bylaws, Department of Labor Office of Labor Management Standards Directives, and 29 USC 481(c)." (ECF No. 46 at 5-6, 18) This allegation is insufficient to establish Defendants acted under the color of *state law*. Section 1983 specifically imposes liability on "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, *of any State* or Territory or the District of Columbia" deprives someone of "any rights, privileges, or immunities secured by the Constitution and laws." (Emphasis added). This language means that only state actors, rather than federal actors,

In addition to failing to identify a party that could be liable for alleged constitutional violations, Plaintiff has further failed to plead necessary facts to support his claims. Despite alleging Defendants violated his rights guaranteed by the equal protection clause of the Fourteenth Amendment and freedoms of speech and assembly under the First Amendment, he does not specify a protected class to which he is a member or established government action in suppressing his otherwise protected speech. *See Nolan v. Thompson*, 521 F.3d 983, 989 (8th Cir. 2008) ("To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class."). Plaintiff seems to suggest that being a "qualified candidate for Local One, SEIU office" is a protected class for purposes of equal protection analysis. (Am. Compl. at 19, ECF No. 46) He has presented no authority for this tenuous interpretation of constitutional protection. Consequently, Plaintiff's constitutional claims in Counts VII, X, and XIII are also dismissed for failure to state a claim upon which relief can be granted.

### IV. Plaintiff's claim challenging the constitutional validity of 29 U.S.C. § 481(c)

In Counts XIV and XV, Plaintiff challenges the constitutional validity of 29 U.S.C. § 481(c). That subsection of Title IV, § 401 of the LMRDA provides:

> Every bona fide candidate shall have the right, once within 30 days prior to an election of a labor organization in which he is a candidate, to inspect a list containing the names and last known addresses of all members of the labor organization who are subject to a collective bargaining agreement requiring membership therein as a condition of employment, which list shall be maintained and kept at the principal office of such labor organization by a designated official thereof.

29 U.S.C. § 481(c). According to Plaintiff, § 481(c) violates his freedom of assembly under the First Amendment by limiting his ability to access a list of all Local One members unless he

---

can be held liable under § 1983. The statutory authority Plaintiff seems rely for his claim that Defendants should be liable under § 1983 are internal, private union documents and federal law.

travels to the main office in Chicago. He argues such a burden is unreasonable as it prevents him from being able to contact enough members in order to acquire the requisite number of signatures to run for president of Local One.

Section 101(a)(2) of the LMRDA's Bill of Rights provides:

> Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided*, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

29 U.S.C. § 411(a)(2). The Eighth Circuit has noted that § 101(a)(2) of the LMRDA "was patterned after the First Amendment." *Hylla v. Transportation Commc'ns Int'l Union*, 536 F.3d 911, 916 (8th Cir. 2008) (quoting *Reed v. United Transp. Union*, 488 U.S. 319, 326 (1989)). "However, as the [Supreme] Court observed, the rights under § 101(a)(2) are subject to reasonable union rules that may restrict such rights, and thus, § 101(a)(2) is not strictly parallel with the First Amendment even though § 101(a)(2) was patterned after it." *Id.* at 916-17 (citing *United Steelworkers v. Sadlowski*, 457 U.S. 102, 111 (1982)).

Defendants argue the right to freedom of assembly protected under § 101(a)(2) of the LMRDA merely "safeguards the right to meet and the right to speak freely outside of union membership meetings" and the "right to speak freely at union meetings." *See Grant v. Chi. Truck Drivers, Helpers & Warehouse Workers Union*, 806 F.2d 114, 117 (7th Cir. 1986). Defendants contend Local One's rules regarding maintenance and access to the list of the members do not violate Plaintiff's freedom of assembly because Plaintiff has no substantive right to review the list of attendees of membership meetings and they do not prevent any office

candidate from traveling to the main office to access the list in accordance with § 401 of the LMRDA.

The Court agrees that Plaintiff has failed to establish that Local One's rules regarding who can view the list of members and when are unreasonable as to violate his freedom of assembly. Plaintiff essentially makes a policy argument that modern technological advancements justify the Court declaring § 481(c) unconstitutional: "The reality here is that Local One is not a Local at all, but it is a Regional, which was not envisioned by the Congress in 1959, when they passed 29 USC 411, 29 USC 481(c), and other statutes pertinent to this case. *We do have an internet now, and it can be used to make union elections much more fair than they are now with the assistance of the Court.*" (ECF No. 87, at 8) (emphasis added) Such a policy argument, however, is outside the scope of the Court's jurisdiction and is more properly suited for Congress. Accordingly, Count XIV is dismissed.

Plaintiff further argues § 481(c) violates his rights under the Fourteenth Amendment because he is a qualified candidate for union office. As noted above, Plaintiff has not offered authority for his proposition that being a qualified candidate for a local union office is a protected class for the purpose of equal protection analysis. Consequently, Counts XV is also dismissed for failure to state a claim.

## SUMMARY JUDGMENT

### I. Legal Standard

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986); Fed. R. Civ.

P. 56; *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Id.* Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex Corp.*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. *Id.*

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. *Celotex Corp.*, 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

## II. Plaintiff's claims regarding increases in union membership dues

Plaintiff's claims challenging the validity of certain votes that increased membership dues for members of Local One are based largely on Defendants' alleged failure to provide proper notice to members of the vote to increase dues and failure to provide accommodations to members who would have difficulty attending the meeting during which the vote was to take

place. Defendants argue they are entitled to summary judgment because Plaintiff failed to exhaust available internal union remedies before initiating this action in federal court.

"The LMRDA permits a union to institute reasonable exhaustion requirements."[6] *Aleem v. Int'l Union of Am. Fed'n of State, Cty. & Mun. Employees*, 52 F.3d 324 (6th Cir. 1995). Section 101(a)(4) provides that a union member bringing a suit for vindication of rights under the LMRDA may be required to exhaust reasonable hearing procedures within the organization. 29 U.S.C. § 411(a)(4). The exhaustion provision "was designed to further LMRDA's purpose of achieving union democracy by giving unions a reasonable opportunity to correct abuses and by encouraging them to set up machinery for the prompt and fair disposition and review of disputes." *Simmons v. Avisco, Local 713, Textile Workers Union*, 350 F.2d 1012, 1016 (4th Cir. 1965); *see also Runyan v. United Brotherhood of Carpenters*, 566 F. Supp. 600, 606 (D. Colo. 1983) ("The exhaustion remedy requirement is premised on the purpose of giving the labor organization first opportunity to correct abuses and resolve disputes before resort[ing] to outside remedies.") (citing *NLRB v. Indus. Union of Marine & Shipbuilding Workers of Am., AFL-CIO, Local 22*, 391 U.S. 418, 88 (1968)).

The LMRDA, however, "does not make the exhaustion of hearing procedures mandatory in all cases, but allows the courts in their discretion to determine whether pursuit of such remedies is required." *Simmons*, 350 F.2d at 1016 (citing *Detroy v. American Guild of Variety Artists*, 286 F.2d 75, 78-79 (2d Cir. 1961)); *Stevens v. Northwest Ind. Dist. Council, United Bhd. of Carpenters*, 20 F.3d 720, 731, n.28 (7th Cir. 1994) (nothing that courts have discretion

---

[6] This paragraph and the following paragraph are incorporated, with minor alterations, from *Holschen v. International Union of Painters & Allied Trades/Painters Dist. Council No. 2*, No. 4:07CV01455 JCH, 2008 WL 4722713, at *3 (E.D. Mo. Oct. 23, 2008), *aff'd sub nom. Holschen v. International Union of Painters & Allied Trades/Painters Dist. Council #2*, 598 F.3d 454 (8th Cir. 2010).

regarding whether to excuse a failure to exhaust before bringing an LMRDA suit); *Foy v. Norfolk & W.R. Co.*, 377 F.2d 243, 246 (4th Cir. 1967). "Exhaustion has not been demanded when plaintiffs will suffer irreparable harm in the exercise of their LMRDA rights." *Amalgamated Clothing Workers Rank & File Comm. v. Amalgamated Clothing Workers, Philadelphia Joint Bd.*, 473 F.2d 1303, 1308 (3d Cir. 1973). Furthermore, "in situations where fundamental rights are at issue, courts are more inclined to exercise their discretion and allow cases to proceed even though the claimant has not exhausted intra-union procedures." *Darnall v. Dalluge*, No. 08-2057, 2008 WL 2874691, at *6 (C.D. Ill. July 23, 2008).

Here, Article XXII of Local One's Constitution and Bylaws provides:

**Section 1.** Subject to the provisions of Section 2, the President shall be empowered to decide disputes between members relating to their work or their responsibilities to each other or to the Local Union and to decide the claim of members concerning the adjustment of their grievances against employers or Union Representatives. The decision of the President shall be final and binding in such matters, except that a member who is not satisfied with such decision shall have the right to appeal as provided in Section 2 hereof. *It is expressly understood that, as a condition of membership, each member agrees to be bound by the provisions of Sections 1 and 2 of this Article and to exhaust all procedures and remedies provided therein and to refrain from the institution or prosecution of any action in any court, tribunal or other agency until the procedures and remedies therein are fully exhausted.* Any member who brings any action in violation of this provision may, in addition to other penalties, be required to reimburse the Local Union or its officers for the costs' and attorneys [sic] fees incurred in defending such action.

**Section 2.** Any member who has a dispute as defined in Section 1 shall, within ten (10) days from the date such dispute arises, appeal in writing to the President by certified mail. If such member is not satisfied with the decision of the President, or if the President has not rendered a decision within fifteen (15) days following receipt of the appeal, the member may appeal his or her case to the Appeals Committee of the Executive Board. The Appeals Committee shall consist of five (5) Executive Board Members assigned by the President. Any such appeal to the Appeals Committee of the Executive Board shall be filed in writing by certified mail with the Secretary-Treasurer. The decision of the Appeals Committee shall be due or rendered not later than thirty (30) days after receipt of the appeal. The decision of the Appeals Committee of the Executive Board shall

be subject only to such further appeal as may be permissible under the Constitution and Bylaw of the International Union.

(ECF No. 66-1, at 13) (emphasis added)

Article XVII of SEIU's 2016 Constitution and Bylaws provides:

**PREAMBLE.** In order to ensure members' protection from the filing of frivolous charges, the following procedures shall apply:

**Section 1.** Local Unions, their officers or members, and officers of any affiliated body, and officers of the International Union, as the case may be, may be charged with:

. . .

(1) Violation of any specific provision of this Constitution or of the Constitution and Bylaws of the Local Union;

. . .

(5) Financial malpractice;

. . .

(8) Violation of democratically and lawfully established rules, regulations, policies or practices of the International Union or of the Local Union, including democratically and lawfully established rules, regulations, policies and practices of the International Union's Industry Divisions, subject to their approval by the International Executive Board.

(ECF No. 66-2, at 36-37) The sections that follow outline the procedure by which a union member may file charges against any member or officer of a local union, bring such charges to trial before the local union's executive board, and appeal to the International Executive Board.

(*Id.* at 37-39) Article XVII further provides:

**Section 8.** Subject to the provisions of applicable statutes, *every Local Union or member* or officer thereof or officer of the International Union against whom charges have been preferred and disciplinary action taken as a result thereof or *who claims to be aggrieved as a result of adverse rulings or decisions rendered, agrees, as a condition of membership or affiliation and the continuation of membership or affiliation, to exhaust all remedies provided for in the Constitution and Bylaws of the International Union and the Local Union and further agrees not to file or prosecute any action in any court, tribunal or other agency until those remedies have been exhausted.*

**Section 9.** *The SEIU Member Bill of Rights and Responsibilities in the Union shall be enforced exclusively through the procedures provided in this Article* and any decision rendered pursuant to the procedures provided for herein, including

any appeals, shall be final and binding on all parties and not subject to judicial review.

(ECF No. 66-2, at 39-40) (emphasis added)

Plaintiff alleged in the Amended Complaint that he "has exhausted all remedies within Defendant Local One, SEIU in order to try to recover said excessive dues charges, with no results." (Am. Compl. ¶ 5, ECF No. 46) His testimony during his deposition, however, paints a different picture. Plaintiff testified that he emailed Garza in May 2017, asking for a refund in the form of the difference between the 2015 dues amount ($37) and 2016 and 2017 increased dues ($42 and $47 respectively). (Dep. of Arthur Clemens at 24:10-21, ECF No. 66-4; Ex. O, ECF No. 1-20) Garza replied that Plaintiff's request for a refund was denied because the increase in dues was the result of a valid vote of Local One members on September 8, 2012. (Dep. of Arthur Clemens at 24:22-25, 25:1-2, ECF No. 66-4; Ex. O, ECF No. 1-20) Plaintiff then testified he emailed Balanoff to appeal Garza's decision[7]; however, Plaintiff never received a reply from Balanoff. (Dep. of Arthur Clemens at 25:2-4, ECF No. 66-4) When asked by defense counsel if he had done anything further to exhaust his remedies concerning his complaint about the increased union dues – which form the basis of Counts I, II, and III – Plaintiff responded "No, that's it."[8] (*Id.* at 25:5-24)

---

[7] The Court notes Plaintiff's email to Balanoff was seemingly not in compliance with Local One's prescribed procedure for appealing disputes to a local union's president, which mandates such an appeal be sent by certified mail. (ECF No. 66-1, at 13) Defendants do not press this deviation. If they had objected on such grounds, the Court would have excused Plaintiff's noncompliance as nonmaterial and non-prejudicial.

[8] Plaintiff testified about another instance in 2012 when he and another person went to the Office of Labor-Management Standards of the United States Department of Labor to file a complaint. (Dep. of Arthur Clemens at 27:9-25, ECF No. 66-4) Plaintiff, however, repeatedly asserted that complaint with the Department of Labor is irrelevant to this action. (*Id.* at 27:25, 37:17-20, ECF No. 66-4)

- 16 -

Later in his deposition when discussing Count VIII, Plaintiff admitted he was aware of the appeals process but chose to circumvent it.

> Q. After you got a ruling from the Local One Executive Board, did you take any other steps to appeal their ruling about your complaint about the election of September 2017?

> A. Well, I did not appeal it back to the Local One Executive Board even though I think there's some clause in the Constitution that says I'm supposed to do that. I thought it was ridiculous to appeal back to the same people that ruled against me the first time.

> Q. Did you ever appeal to the SEIU International?

> A. I have -- Let me think. Well, I have found this -- No, I didn't because I filed this lawsuit on September the 8th, which is one day before the election. This lawsuit is claiming that, if you read my amended complaint, it basically says that the International Union's Constitution, the Local One's Constitution and the Department of Labor directives and the federal law all are used for the purpose of denying me equal protection of the law and denying me and all other members freedom of assembly. So it was irrelevant to try to appeal any further to the International.

> Q. So you didn't?

> A. No.

(Dep. of Arthur Clemens at 44:19-25, 45:1-19, ECF No. 66-4)

The Court finds Plaintiff failed to exhaust internal union remedies before filing this lawsuit as required by Local One's bylaws, SEIU's constitution, and § 101(a)(4) of the LMRDA, 29 U.S.C. § 411(a)(4). He admitted to being aware of the requirement to appeal any unsatisfactory decision by the Local One Executive Board to SEIU but elected to file this lawsuit instead. To the extent Plaintiff suggests that abiding by the prescribed appeal processes outlined in Local One's bylaws and SEIU's constitution would be futile, he has failed to present any evidence of personal animus from Defendants. *See Winter v. Local Union No. 639, Affiliated With Int'l Bhd. of Teamsters*, 569 F.2d 146, 149 (D.C. Cir. 1977) (requiring a union member

seeking to avoid adverse summary judgment based on failure to exhaust internal union remedies "make a specific and convincing showing of union animus" to demonstrate futility). Further, the Court declines to excuse his admitted failure because he has not presented evidence that he will be subjected to irreparable harm. *Cf. Holschen v. Int'l Union of Painters & Allied Trades/Painters Dist. Council No. 2*, No. 4:07CV01455 JCH, 2008 WL 4722713, at *3 (E.D. Mo. Oct. 23, 2008) (exercising judicial discretion to excuse a union member's failure to exhaust internal remedies after he was expelled from the union and prohibited from pursuing internal appeals process unless he paid a $15,000 fine), *aff'd sub nom. Holschen v. Int'l Union of Painters & Allied Trades/Painters Dist. Council #2*, 598 F.3d 454 (8th Cir. 2010).

In addition to not exhausting internal union remedies, Plaintiff's claims against Defendants fail as a matter of law because he has not demonstrated his rights under the LMRDA were violated. The LMRDA prohibits the increase of membership dues by a local labor organization unless authorized "by majority vote by secret ballot of the members in good standing voting at a general or special membership meeting, after *reasonable notice* of the intention to vote upon such question." 29 U.S.C. 411(a)(3)(A) (emphasis added). The Union's bylaws also require "reasonable notice" of meetings. (ECF No. 66-1, at 12 & 14) "The test to determine reasonableness under § 411(a)(3)(A) is whether the notice 'descends to particulars, and the ordinary union member, attentive to the interests he has at stake in such a situation, is, in some manner, thereby made aware of the specific issue to be voted upon a reasonable time in advance of the meeting.'" *Myers v. Hoisting & Portable Local 513*, 653 F. Supp. 500, 508 (E.D. Mo. 1987) (quoting *Gates v. Dalton*, 67 F.R.D. 621, 628 (E.D. N.Y. 1975)). Neither § 411(a)(3)(A) nor the relevant bylaws in this case require individual notice. *See Myers*, 653 F. Supp. at 508.

Addressing the September 8, 2012 vote, Plaintiff argues he did not receive "official notice" of the meeting. During his deposition, however, he admitted to knowing about the meeting in advance but complained that it was at an inconvenient time.

> A. All right. First of all, we worked on the night the people at Busch Stadium worked on the night before the election and we had to work the night after, the night of the election for a Milwaukee game. We were playing Milwaukee, both games, and they didn't give us any kind of a chance to, they didn't give us any kind of a chance to vote absentee or, or they didn't send anybody down to our break room and give us a chance to vote. It's like we didn't exist.
>
> Q. So the vote was taken, an in person vote at the union hall . . .
>
> A. Correct.
>
> Q. . . . on a night that you would to work?
>
> A. Right.
>
> Q. And so you couldn't attend because of the fact that you had to work while the meeting was scheduled?
>
> A. Well, not exactly right when the meeting was scheduled, but we had -- I mean, I worked until like probably seven, eight in the morning and the meeting was at eleven and there was not one single person where I worked that had a reasonable opportunity to vote for that election.
>
> Q. So the meeting didn't conflict with your work, your position is that because you were tired or otherwise couldn't go, it was invalid?
>
> A. Yes, because they could have given us an opportunity to vote absentee, and they didn't.
>
> Q. Okay, no absentee ballot. Anything else about that election that you think makes it invalid?
>
> A. Right, no notice. *I didn't get a notice. Nobody I worked with got a notice of the election. I heard about the, I heard about the election but I didn't receive an official notice of the election.*

(Dep. of Arthur Clemens at 20:4-25, 21:1-13, ECF No. 66-4) (emphasis added)

Defendants maintain notice was sent via regular mail. (Aff. of Nancy Cross ¶¶ 21-23), ECF No. 66-3) Regardless of whether Plaintiff actually received such notice via mail, he admits he had knowledge of the September 8, 2012 vote but believes he should have been afforded the opportunity to participate via absentee ballot. He fails to cite any Local One bylaw, SEIU constitutional provision, statute, or case law requiring unions to permit members to vote via absentee ballot. Plaintiff plainly admits he had knowledge of the September 8, 2012 vote and was not working at the time of the vote as his shift ended by 8:00 a.m. and the meeting began at 11:00 a.m. at the union hall located less than eight miles away from his place of work. (Defs.' SUMF ¶ 19, ECF No. 67) The choice between (1) attending a membership vote several hours after his shift and eight miles away from his place of work or (2) not attending was not "so coercive as to be a 'substantial burden on the right to vote.'" *Dobson v. Chicago & Northeast Ill. Dist. United Bhd. of Carpenters*, 707 F. Supp. 348, 352 (N.D. Ill. 1989) (finding that scheduling a vote on a Sunday and not providing absentee ballots was reasonable even though some members who chose to vote that day were inconvenienced); *see also McGinnis v. Local 710*, 774 F.2d 196, 201-03 (7th Cir. 1986) (holding that a union violated the LMRDA by requiring in-person voting and not providing for either absentee ballots by mail or regional meetings for the approximately 18% of members who lived more than 150 miles from the union hall).

Because of the above analysis, Defendants are entitled to summary judgment on Counts I, II, III, IV, V, VI, and XII.

### III. Plaintiff's claim against Balanoff, Garza, and Cross for alleged financial malpractice

Lastly, the Court finds Balanoff, Garza, and Cross are entitled to summary judgment on Plaintiff's claim for financial malpractice because he failed to exhaust internal union remedies. There is no statutory provision or definition of financial malpractice. Rather, financial

malpractice is one of the enumerated charges with which a local union, officer, or member may be charged according to SIEU's Constitution and Bylaws. (ECF No. 66-2, at 36) According to Plaintiff's testimony in his deposition, he filed a complaint related to alleged financial malpractice with the Department of Labor in 2017.[9] (Dep. of Arthur Clemens at 37:4-20, ECF No. 66-4) By first filing a complaint with the Department of Justice, Plaintiff skipped over the process established by Local One's bylaws and SEIU's constitution. Because Plaintiff failed to utilize union procedures for making this claim against Balanoff, Garza, and Cross before filing this action, the Court grants summary judgment in favor of the individual defendants on Count IX.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss or in the Alternative for Summary Judgment (ECF No. 65) is **GRANTED**. Counts VII, VIII, X, XIII, XIV, and XV are **DISMISSED** pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted and the Court **GRANTS** summary judgment in favor of Defendants on Counts I, II, III, IV, V, VI, IX, XI, XII as there are no genuine issues as to any material facts related to those claims and Defendants are entitled to judgment as a matter of law pursuant to Rule 56.

A separate Judgment accompanies this Memorandum and Order.

**IT IS FURTHER ORDERED** that all other pending motions are **DENIED as moot**.

Dated this 23rd day of September, 2019.

RONNIE L. WHITE
**UNITED STATES DISTRICT JUDGE**

---

[9] As explained previously, Plaintiff argues "whatever [he] did with the [Department of Labor] is irrelevant to this lawsuit." (Dep. of Arthur Clemens at 37:17-20, ECF No. 66-4)